Hillsborough, &#125;
May 7, 1929. &#125;

EDITH W. DUTENY *v.* THE PENNICHUCK WATER COMPANY.

66

*Lucier & Lucier (Mr. Alvin A. Lucier* orally), for the plaintiff.

*Warren, Howe & Wilson (Mr. Howe* orally), for the defendant.

BRANCH, J.   1. The motion for a directed verdict was properly denied. One who creates or maintains a situation which involves an unreasonable risk of injury to others because of their expectable lawful action is properly regarded as negligent. *Olney* v. *Railroad,* 71 N. H. 427, 431. Since the defendant, for the accommodation of its meter, saw fit to maintain a hole in the floor of the plaintiff's cellar, it was its duty to exercise reasonable care to protect persons lawfully in the cellar from the danger of falling into the hole. If for this purpose it chose to make use of a protective covering constructed by someone else, it thereby became responsible for structural defects therein which were discoverable by due care, and for the maintenance thereof in a reasonably safe condition. *Burke* v. *Railroad,* 82 N. H. 350, 359. There was evidence that for three or four years before the accident the box over the defendant's meter had been structurally defective by reason of the board across the end which made it impossible to fit the cover into place. Clearly the defendant's meter-readers who saw the box every three months, were chargeable with knowledge of this defect, and since, according to the evidence, they were specifically charged with the duty of replacing all covers securely, their knowledge of conditions which made this difficult or impossible was the knowledge of the company. 3 Labatt, Master & Servant (2d *ed.*), *s.* 1052 *c.* There was also evidence from which it might be found that the cover was not placed squarely over the opening by the defendant's agent at the time of the last meter-reading, in spite of the meter-reader's declaration to the contrary. The plaintiff's evidence negatived the probability that anyone else had touched the cover since his visit, and from her description of the accident, it was a legitimate inference that the cover was not in place at that time.

That persons rightfully in the cellar might step on the cover was clearly expectable conduct on their part. The location and construction of the box both invited its use in this way. Its location in the floor near the hanging shelf and the gas meter made it a convenient support for anyone to step upon in case added height became desirable to facilitate reaching or inspection. Its substantial construction offered an assurance of safety for this use. The testimony that the plaintiff had at previous times stood upon it in order to get preserves from the shelf and to put money in the gas meter, was evidence of

its attractiveness and apparent suitability for this purpose. The evidence that this portion of the cellar was somewhat dimly lighted increased the likelihood of its use to raise the line of vision by anyone desiring to observe closely the gas meter or the contents of the shelf. Herein lies the distinction between this case and *Rowan* v. *Company*, 79 N. H. 409, upon which the defendant strongly relies. The court there found no evidence to justify a conclusion that the defendant should have anticipated that the plaintiff would stand on the bathtub cover. There is ample evidence of the corresponding fact in the present case.

Nor was the plaintiff forced to rely upon the theory of constructive knowledge in order to charge the defendant with an appreciation of the risk that persons visiting the cellar might get into the box if the cover was not properly replaced, for there was evidence of actual appreciation also. The servant of the defendant, who read the meter last before the accident, testified that he was instructed "to be sure and put the covers on tight" and understood that one of the purposes of this order was to make sure that the covers were put in "good and safe so a person won't get in."

A conclusion that the defendant was negligent in maintaining the box in an unnecessarily dangerous condition (*Caldon* v. *Company*, 75 N. H. 532, 533) both by reason of the structural defect therein and the improper management of the cover, was fully justified by evidence of the foregoing facts, and received further confirmation from the testimony that the defendant had in common use at the time of the accident another type of meter box constructed of metal, the installation of which would have obviated all the dangers incident to the use of the box in question. *Reynolds* v. *Company*, 81 N. H. 421, 423.

The defendant argues that "as plaintiff was not attempting to stand on the cover, and did not get upon it by mistaking it for the floor, what her rights of recovery, if any, might have been in those or other foreign circumstances is immaterial." The same idea was expressed in one of defendant's requested instructions and restated at the oral argument in the contention that the legal cause of the plaintiff's injury was her unexplained loss of balance which the defendant had no reason to anticipate. In *Olney* v. *Railroad, supra*, a similar claim was unsuccessfully urged, and the court there pointed out that "there may have been a cause for the loss of balance which legally and logically was the proximate cause of the injury . . . for which the defendants were legally responsible." The present case involves a corollary of this proposition. Here we have, not an ante-

cedent cause for the plaintiff's loss of balance, but a subsequent intervening cause of her injury for which the defendant was responsible, and without which her momentary loss of balance would, in all probability, have been innocuous. If the plaintiff had voluntarily stepped on the cover, and had been injured because it was insecurely placed, the defendant apparently would not deny that the accident was due to the condition of the cover, although the rightfulness of the plaintiff's conduct might not be conceded. There seems to be no logical reason for concluding that the involuntary nature of her act destroyed this causal connection. Since the defendant was chargeable with knowledge that persons rightfully in the cellar were likely to step upon the cover, the fact that the plaintiff stepped upon it involuntarily was immaterial.

2. One of the defendant's employees, called as a witness by the plaintiff, testified that the company had cast iron boxes which it used for the protection of meters, and, subject to exception, he was further permitted to testify that it was the defendant's custom when it had a "meter below the ground to put in one of these round boxes made of metal." The witness subsequently testified that his knowledge of this custom only covered a period of "a little over a year" before the trial, and hence did not extend back to the date of the accident. The witness was later permitted to testify, subject to exception, that "you could put one of those iron boxes around the meter" in question. The defendant argues that "This was an inadmissible subsequent conduct admission, and of prejudicial character." This argument would apparently be valid were it not for the fact that another witness afterward testified that the round meter boxes were in use by the defendant at the time of the accident. This testimony met the objection that their use as described by the previous witness might be regarded as an admission by subsequent change, and cured whatever error there may have been in the rulings of the court above referred to, "upon the general principle, that where testimony is incompetent or inadmissible when received, if, by the introduction of subsequent testimony, it is made competent, the objection is removed." *Tilton* v. *Tilton*, 41 N. H. 479, 481; *Dow* v. *Merrill*, 65 N. H. 107, 110; *Lisbon* v. *Lyman*, 49 N. H. 553, 584; *Eastman* v. *Company*, 44 N. H. 143, 145; *Lyford* v. *Thurston*, 16 N. H. 399, 405.

3. The testimony that the plaintiff had, upon previous occasions, stood on the meter box to get preserves and to put money in the gas meter, was properly admitted, not for the purpose of charging the defendant with actual knowledge of her conduct, but in order to show

the convenience and apparent suitability of the box for this purpose, and the resulting probability that it would be so used.

4. The exceptions taken during the argument of the plaintiff's counsel are without merit. Referring to one Martin Delaney, the last man who read the defendant's meter before the accident, counsel remarked, "And didn't we have a chase to get that fellow," whereupon the defendant claimed an exception. A reading of the record discloses the fact that plaintiff's counsel had great difficulty in finding out from defendant's agents the name of this man, and the foregoing comment was not improper. Nevertheless, at the suggestion of the court, the remark was withdrawn, and the court said to the jury, "It is all out of the case." Clearly the rights of the defendant were in no way prejudiced by this occurrence.

Continuing his argument, plaintiff's counsel said, "Martin Delaney was finally summoned here, wasn't he?" and to this statement the defendant claimed an exception. Counsel then said, "I will withdraw the word 'summoned.' He has been in court and testified, Your Honor." To this the court replied, "All right." The court's remark was tantamount to a ruling that the error, if any, had been corrected, and in any event, the incident was of such a trivial nature that it would be absurd to disturb the verdict on this account.

5. Equally unavailing is the exception taken by the defendant to the following portion of the charge: "If you find that the defendant adopted this box and cover for the protection of its meter and failed to exercise a reasonable degree of care to make it reasonably safe for such rightful, lawful uses which the defendant's agents ought reasonably to have anticipated, . . . defendant was negligent." As indicated in the first section of this opinion, the foregoing statement of the law was correct.

6. Counsel concede that defendant's request No. 10 "amounted to a practical denial of plaintiff's case," and for the reasons set forth above, it was properly denied. Defendant's other exceptions have not been argued, and are understood to have been waived.

*Judgment on the verdict.*

All concurred.