Sullivan,
Feb. 3, 1931.

### RALPH COLBY *v.* TREISMAN BROTHERS.

*Barton & Shulins (Mr. Shulins* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers (Mr. Jonathan Piper* orally), for the defendant.

MARBLE, J.   The plaintiff, a truckman, was accustomed to call regularly at the defendant's place of business on Depot street, in Concord, for the purpose of collecting merchandise to be delivered to the defendant's customers.   He invariably entered from Depot street while his assistant drove the truck to a loading platform located in a passageway at the rear of the premises.

Packages left on this platform were loaded directly onto the truck, but those which were left on the shipping floor were first lowered to the level of the platform by a freight elevator.   When this elevator was not on the shipping floor, the shaft was guarded by a movable gate and by covers or hatches which opened and closed with the movement of the elevator.

The plaintiff operated the elevator himself when he found packages on the shipping floor, but if there were no packages there (as was the case on the day of the accident), he did not ride down on the elevator, but walked across the hatches, passed under the gate, which was suspended a few feet above the hatches by a rope, and jumped down to the loading platform to join his helper in the passageway.   He testified that Hyman Treisman, superintendent and "one of the owners" of the corporation, had seen him go out in this manner without ob-

jecting, and that he had observed others, including the superintendent and an employee, leave the premises in the same way. The exit at this point was the only exit from the back of the building.

In passing under the gate on other occasions he had placed his hand on the bottom of the gate "just to see that" his "head cleared" it. As he did this on the occasion in question, the rope broke, letting the gate fall upon him and causing the injuries for which he seeks recovery. The superintendent knew that the rope was defective but had neglected to replace it. The defendant concedes that the plaintiff was authorized to descend in the elevator, but contends that such authorization did not include an invitation to go out over the hatches and under the gate. While it is true, as suggested, that a property owner's obligation to an invitee "does not extend beyond the use invited" (*Lavoie* v. *Company*, 79 N. H. 97, 98), the facts here preclude a peremptory application of the rule in the defendant's favor.

The New Hampshire cases on which particular stress is laid may, for the purposes of this discussion, be sufficiently distinguished either on the ground that the plaintiffs were not deemed to be invitees at all (*Clark* v. *Manchester*, 62 N. H. 577; *Hughes* v. *Railroad*, 71 N. H. 279; *Devost* v. *Company*, 79 N. H. 411, 414; *McCaffrey* v. *Company*, 80 N. H. 45, 47) or because the evidence was insufficient to justify a finding that the defendants ought to have anticipated the plaintiff's conduct (*Morrison* v. *Company*, 70 N. H. 406; *Straw* v. *Company*, 76 N. H. 35). Many of the decisions of foreign jurisdictions cited in the defendant's brief are similarly distinguishable; one is decided on the ground of contributory negligence (*Knox* v. *Company*, 69 Hun 231), while others, such as *Stickney* v. *Salem*, 3 Allen 374, 376, are of doubtful authority in this state. *Ahern* v. *Concord*, 82 N. H. 246, 247.

The facts on which recovery was denied in *Leavitt* v. *Company*, 69 N. H. 597, are entirely at variance with those here disclosed. In that case the use of the elevator which caused the accident had been forbidden, the defendant had directed the man in charge to keep it locked, the plaintiff knew that no one was allowed to ride on it, and he himself had never been on it before.

The defendant in the present case, having invited the plaintiff to enter its building for business purposes, was required to keep in reasonably safe condition such portion of the premises as it ought reasonably to have foreseen he would be likely to occupy in performing his work. *True* v. *Company*, 72 N. H. 154; *Stevens* v. *Company*, 73 N. H. 159; *Hobbs* v. *Company*, 75 N. H. 73, 81; *Nolette* v. *Company*, 81 N. H.

222; *Derosier* v. *Company*, 81 N. H. 451, 466, 467. And on the evidence the corporation was properly chargeable with knowledge that he might take the same route from the building on that day that he had taken before when there were no packages to be conveyed by the elevator, and that he might also touch the gate as a reasonable incident of his departure. *Ahern* v. *Concord*, 82 N. H. 246.

The suggestion that the superintendent had never seen him place his hand upon the gate is not borne out by the evidence. The plaintiff himself testified affirmatively and positively on that point. The same is true of the contention that the plaintiff let himself down by swinging on the gate. He testified: "I didn't put my hand up there to pull down on it" and "I put no weight whatsoever" "on it." The jury were entitled to accept his statements as true. They were likewise justified in concluding that the defendant was aware that the rope might break at any time: it was "bad" and had been in that condition for a long while.

The claim that the exception should be overruled because of the plaintiff's contributory negligence does not require serious consideration. P. L., *c.* 328, *s.* 13.

In accordance with the agreement under which the defendant's motion was granted, the order is

*Judgment for the plaintiff for $1,000.*

All concurred.