[Civ. No. 14719. Second Dist., Div. Two. Apr. 17, 1945.]

MARY E. R. CHAPMAN, Appellant, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation) et al., Respondents.

Lin Price for Appellant.

Joseph A. Ball for Respondents.

MOORE, P. J.—In this action sounding in negligence judgment of nonsuit is questioned on the appeal.

Plaintiff fell and was injured while lawfully using the common exit of the apartment building of which she was a tenant.

Basing her action upon the claims that she was free from negligence and that the common facilities of the building were defective and unfit for such use, she sued the proprietors for the damage she had suffered. For the purpose of this appeal the hall and the steps down to the doors, the doors of the exit and the steps on the outside below the doors are deemed common facilities and were under the control of defendants. Having heard and considered all of plaintiff's evidence the trial court granted defendants' motion for nonsuit. Plaintiff's

appeal from the minute order is predicated upon the proposition that the evidence introduced on plaintiff's behalf together

with all reasonable inferences therefrom entitled her to the jury's determination.

The entire evidence leaves no doubt that plaintiff's own negligence caused or contributed to cause her injuries. Also, it discloses that defendants were free from negligence. A résumé of all of plaintiff's testimony demonstrates the former; the substance of the testimony of Messrs. McNamara and Woodworth establishes the latter. Those gentlemen testified that the use of stops on the doors in holding them open is a safe condition; that there had never been any trouble or complaint on account of them; that the doors are held open

by pressing the stops against the surface of the marble threshold on which they stand or by allowing the extremities of the stops to rest against the outer edge of the threshold. The doors when opened perpendicularly to the building extend five inches over the top step.

Mrs. Chapman, then 80 years of age, had lived in the Omar H. Hubbard Building in Long Beach approximately three and a half years with her sister, Mrs. Ream. About 10 a. m. of August 8, 1942, the two ladies took the elevator from their apartment on the ninth floor for the purpose of visiting a market across the street to purchase some fresh berries. On the ground floor they proceeded to the Cedar Street exit and descended three steps to the doors which permit egress to the street. Both doors stood partially open (see drawings), the stops resting against the edge of the threshold. Walking in advance and more briskly than her sister, Mrs. Ream did not witness appellant's attempt to reach the sidewalk. It was proved by the unfortunate lady that as she "went to push the right door out further" the door swung back. She tried to regain her hold but could not "because there was nothing under that door" to hold her from falling into the street. The door pushed off; she tried to balance herself but could not; she stepped off, "the door flew back" and "flung" her out. She had gone out of the same exit hundreds of times, both when the doors were open and when they were closed. She knew they were swinging doors and had pushed them open many times; knew the step below extended the entire width of the two doors. At one time in the course of her testimony she declared her accident happened in this wise: "I made no effort to hold the door after I got it open . . . and after I got out of there I did not get out fast enough and it knocked me out before I could get out."

On some material points she testified in contradiction to her deposition given twenty days prior to trial. At that time she said the doors were closed; at the trial she declared they were partially open; then she deposed that she and her sister were in a hurry to get out because the luscious berries did not last long; on the stand she asserted such statement to be untrue; then she testified that she took hold of the door to open it and it slammed shut before she could get out; at the trial she said she pulled it toward her, also that she pushed it in order to get out and that it flew back and struck her hip;

on the former occasion she said that Mrs. Ream let loose the door and it swung back too quickly and hit her; in the presence of the court she declared such was not the truth.

Following the efforts of her persistent counsel to establish the cause of her accident to have been the actionable negligence of defendants, the patient trial judge was unable to elicit anything more than that when she went out the door struck her hip and caused her to fall upon the stone step and that the fall broke her femur. From such evidence no reasonable inference can be drawn other than that appellant lost her balance and fell. It is not satisfactorily proved that the door knocked her down or struck her after she had fallen to the sidewalk on which she lay when observed a moment later by her sister. Conceding the doors to have had defective stops, their condition was known to appellant for she had oftentimes entered and passed out of the same exit and it had suffered no alteration or deterioration. If the stop was not pressed against the threshold but rested against its exterior edge no showing was made that the latter condition was negligence. The doors had been so propped open scores of times. In passing to the outside it was necessary for appellant to apply some force to the door whether propped or anchored by the stop. If she miscalculated the amount of exertion to be applied it was because of her inattention or her haste.

■ If there are visible structural defects in the common facilities of an apartment house they are used by the tenant at his peril. (*Watwood* v. *Fosdick*, 212 Cal. 84 [297 P. 881].) ■ If a defective condition develops without the knowledge of the tenant, there is no liability of the landlord unless it be proved either that he had gained knowledge of the new condition and had opportunity to make repairs (*Williams* v. *Owl Drug Co.*, 10 Cal.App.2d 621 [52 P.2d 499]) or that the condition had existed long enough to warrant the inference of such knowledge (*Gold* v. *Arizona Realty & Mtg. Co.*, 12 Cal. App.2d 676 [55 P.2d 1254]). ■ If the doors were heavy and the springs strong they had always been so. It was not negligence to have such doors and springs. They functioned as usual. The charge of negligence because the doors opened partially over the step leading to the sidewalk is novel indeed. When opened to an angle of 90 degrees, about two feet of each door stood above the threshold allowing only a margin of

five inches of the door to extend over the step. If such had been structurally unsafe, the architect who designed it and the municipal authorities who accepted it would have disapproved of it and twenty years' use of the exit would have demonstrated its unfitness. Also, if it was a defect, appellant had had more than three years familiarity with it and was negligent in using it in a manner to cause her injury.

Inasmuch as she was uncertain as to whether the door knocked her out or struck her as she lay upon the sidewalk or whether she was injured by the door or by her fall, it cannot be inferred that either is true. (*Leach* v. *Board of Dental Examiners,* 87 Cal.App. 207 [262 P. 61].) In order to warrant a judgment for negligence the complainant must supply more proof than that which raises a conjecture, a suspicion, or a speculation that the alleged tort feasor had committed a wrongful act. To warrant a finding of negligence a connection must be established between the act charged and the injury suffered; a suspected cause is not sufficient. (20 Am.Jur. 1028.) Since there is no proof that any negligence of defendants caused the injuries of appellant (*Dull* v. *Atchison, Topeka & Santa Fe Railway Co.,* 27 Cal.App.2d 473 [81 P.2d 158]), the judgment must be affirmed.

It is so ordered.

McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 14, 1945. Carter, J., voted for a hearing.